IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, and ARKANSAS DEPARTMENT OF ENERGY & ENVIRONMENT, DIVISION OF ENVIRONMENTAL QUALITY,<br>Plaintiffs,<br><br>v.<br><br>DOMTAR A.W. LLC,<br>Defendant. | Civil Action No. 4:26-cv-04059-JTS |

**CONSENT DECREE**

## TABLE OF CONTENTS


I. JURISDICTION AND VENUE .......... 2
II. APPLICABILITY .......... 3
III. DEFINITIONS .......... 4
IV. CIVIL PENALTY .......... 5
V. COMPLIANCE REQUIREMENTS .......... 7
VI. ADDITIONAL INJUNCTIVE RELIEF: MITIGATION .......... 15
VII. REPORTING REQUIREMENTS .......... 18
VIII. STIPULATED PENALTIES .......... 21
IX. FORCE MAJEURE .......... 26
X. DISPUTE RESOLUTION .......... 28
XI. INFORMATION COLLECTION AND RETENTION .......... 30
XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......... 32
XIII. COSTS .......... 34
XIV. NOTICES .......... 34
XV. EFFECTIVE DATE .......... 35
XVI. RETENTION OF JURISDICTION .......... 36
XVII. MODIFICATION .......... 36
XVIII. TERMINATION .......... 36
IX. PUBLIC PARTICIPATION .......... 37
XX. SIGNATORIES/SERVICE .......... 37
XXI. INTEGRATION .......... 38
XXII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .......... 38
XXIII. HEADINGS .......... 39
XXIV. FINAL JUDGMENT .......... 39
XXV. APPENDICES .......... 39
APPENDIX A .......... 44
APPENDIX B .......... 46

Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA") and Arkansas Department of Energy & Environment, Division of Environmental Quality ("DEQ"), have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Domtar A.W. LLC ("Domtar" or "Defendant"), violated Sections 111 and 112 of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7411 and 7412, at Domtar's kraft pulp mill facility located at 285 Highway 71 South in Ashdown, Arkansas ("Domtar Facility" or "Facility").

The Complaint against Defendant alleges violations at the Domtar Facility of (1) New Source Performance Standards ("NSPS") for Kraft Pulp Mills, 40 C.F.R. Part 60, Subpart BB, pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, incorporated by reference in 8 CAR § 42-202(2); (2) National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Hazardous Air Pollutants from the Pulp and Paper Industry, 40 C.F.R. Part 63, Subpart S, pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and incorporated by reference in 8 CAR § 42-202(3); and (3) NESHAP for Major Sources: Industrial, Commercial, and Institutional Boilers and Process Heaters, 40 C.F.R. Part 63, Subpart DDDDD, pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and incorporated by reference in 8 CAR § 42-202(3).

In the Complaint, the United States and DEQ seek civil penalties and injunctive relief for the alleged violations referenced above.

Prior to the lodging of this Consent Decree, Defendant applied for an exemption from the NSPS Subpart BB standard for Total Reduced Sulfur ("TRS") emissions at the horizontal belt brown stock washer system, pursuant to 40 C.F.R. § 60.283(a)(1). Specifically, the exemption applies to TRS emissions above the levels controlled by requirements set forth in this Consent Decree.

Prior to the lodging of this Consent Decree, the Defendant proposed a Third-Party Reviewer, as required by Appendix A, for EPA approval. In consultation with DEQ, EPA approved that Third-Party Reviewer.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue) with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. §§ 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, and 28 U.S.C. §§ 1391 (b) and (c) and 1395(a), because Defendant conducts business in this District, and the violations that constitute the basis for this Complaint occurred in this District. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and any such action and over Defendant and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113 of the CAA, 42 U.S.C. § 7413(b).

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States and DEQ, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the final written agreement (which may be designated as Confidential Business Information in accordance with 40 C.F.R. Part 2) to EPA and DOJ in accordance with Section XIV (Notices) and to DEQ in accordance with Ark. Code Ann. §§ 4-75-601 *et seq.*, and 8 CAR §§ 40-1302 and 41-313. Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5. Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the Act, in regulations promulgated pursuant to the Act, or in any state statutes or regulations have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Complaint" means the complaint filed by the United States and DEQ in this action;

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXV);

"Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

"Defendant" or "Domtar" means Domtar A.W. LLC;

"DEQ" means Arkansas Department of Energy & Environment, Division of Environmental Quality;

"DOJ" means the United States Department of Justice and any of its successor departments or agencies;

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" means the definition provided in Section XV;

"Facility" means Defendant's kraft pulp mill facility located at 285 Highway 71 South in Ashdown, Arkansas.

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States, DEQ, and Defendant;

"Section" means a portion of this Decree identified by a Roman numeral;

"State" means the state of Arkansas;

"Title V Permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. §§ 7661–7661f, implementing regulations, and analogous provisions of federally approved state permit programs; and

"United States" means the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8. Within 30 Days after the Effective Date, Defendant shall pay the sum of $1,500,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging. The civil penalty payment will be divided between the United States and the State as specified below.

9. Defendant shall pay a civil penalty of $750,000, together with interest, to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with Instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Arkansas after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Tracy Altenbaumer
General Manager, Domtar Ashdown
285 Highway 71 South, Ashdown, AR 71822
(870) 898-2711
tracy.altenbaumer@domtar.com

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices).

10. At the time of payment, Defendant shall send notice that payment has been made (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XIV (Notices); and (iii) to EPA in accordance with Section XIV (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States et. al v. Domtar A.W. LLC* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-12655.

11. Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal or State or local income tax.

12. Defendant shall pay a civil penalty of $750,000, together with interest, by check, payable to: "Arkansas Department of Energy & Environment, Division of Environmental Quality." At the time of payment, Defendant shall send the check, together with a transmittal letter in accordance with Section XIV of this Decree (Notices) by mail to:

The Arkansas Department of Energy & Environment, Division of Environmental Quality
5301 Northshore Drive
North Little Rock, Arkansas 72118-5317

Of the civil penalty, 10 percent shall be contributed to the operating fund of DEQ as reimbursement for administrative costs associated with this Consent Decree, consistent with Ark.

Code Ann. § 8-4-103(f)(1). The rest will be deposited into the Environmental Settlement Trust Fund pursuant to Ark. Code Ann. § 19-26-288 and may be used for operational costs of the division.

## V. COMPLIANCE REQUIREMENTS

13. Defendant shall comply with the following provisions with respect to the Facility:

a. NSPS Standards of Performance for Kraft Pulp Mills promulgated at 40 C.F.R. Part 60, Subpart BB ("NSPS Subpart BB"), incorporated by reference in 8 CAR § 42-202(2);

b. NESHAP for Hazardous Air Pollutants from the Pulp and Paper Industry promulgated at 40 C.F.R. Part 63, Subpart S ("NESHAP Subpart S"), incorporated by reference in 8 CAR § 42-202(3); and

c. NESHAP for Major Sources: Industrial, Commercial, and Institutional Boilers and Process Heaters promulgated at 40 C.F.R. Part 63, Subpart DDDDD, pursuant to Section 112 of the CAA, 42 U.S.C. § 7412 ("NESHAP Subpart DDDDD"), incorporated by reference in 8 CAR § 42-202(3).

14. Defendant shall implement the following at the Facility and provide a report, in accordance with Section VII (Reporting Requirements), to EPA about each of the requirements set forth in Paragraphs 14(a), 14(b), and 14(c):

a. Leak Detection and Repair Site Specific Plan.

(1) No later than July 31, 2025, Defendant shall retain, in accordance with Appendix A, an independent Third-Party Reviewer that (1) is not an employee of Domtar and (2) has experience in conducting visual and Method 21 inspections at pulp and paper mills to conduct a full review ("Third-Party

Review") of the Facility's Leak Detection and Repair ("LDAR") Site Specific Inspection Plan ("LDAR Plan"). The Third-Party Review shall include, but is not limited to, review of employee training, standard operating procedures, schematics, and the site-specific plan.

(2) No later than December 31, 2025, Defendant shall review and revise, using appropriate document control procedures and based on the results of the Third-Party Review, its existing LDAR Plan, as follows:

(a) Make any updates necessary to ensure compliance with all applicable federal, state, and local LDAR regulations applicable to equipment at the Facility.

(b) Confirm accuracy of component listings and schematics.

(c) Integrate quality assurance and quality control measures, including a schedule for annual review and revisions of the LDAR Plan.

(d) Develop a training protocol and implement a training program that requires initial and annual training for all personnel who have duties relevant to LDAR.

(e) Include any additional standard operating procedures to ensure future compliance with all federal, state, and local LDAR regulations applicable to equipment at the Facility.

(3) Commencing no later than the Effective Date, Defendant shall have all monitoring requirements of 40 C.F.R. §§ 63.453(k) and (l) be conducted by a contractor until the date of Consent Decree Termination (Section XVIII).

(4) Defendant shall conduct the Detectable Leak Procedures and Negative Pressure Procedures of 40 C.F.R. §§ 63.457(d) and (e) on a semiannual basis (twice a year) commencing no later than January 1, 2025, and continuing until the date of Consent Decree Termination (Section XVIII).

b. Horizontal Belt Brown Stock Washer System.

(1) No later than 10 Days from the Effective Date, Defendant shall maintain the seals on all gaskets, windows, hatches, and enclosures to minimize emissions at the horizontal belt brown stock washer. Exempt from such sealing are where the pulp enters and exits the horizontal belt brown stock washer.

(2) No later than November 17, 2025, Defendant shall completely weld the horizontal belt brown stock washer consistent with installation best practices.

(3) No later than December 31, 2025, Defendant shall implement the measure in Paragraph 14.b(3)(a) to bring the horizontal belt brown stock washer system into compliance with 40 C.F.R. § 60.283(a)(1). If Defendant cannot complete the compliance measure in Paragraph 14.b(3)(a), Defendant shall, no later than December 31, 2025: (1) select one of the compliance measures in Paragraphs 14.b(3)(b) or 14.b(3)(c); and (2) submit to EPA, DOJ, and DEQ, in accordance with the requirements of Section XIV (Notices), the selected compliance measure.

(a) Wire Dryer Enhancements of the Horizontal Belt Brown Stock Washer System.

1) No later than December 31, 2025, Defendant shall

install and commence operation of the Kadant Wire Dryer System and conduct additional improvements, including but not limited to the improvements recommended by the manufacturer to reduce fugitive emissions and recycle TRS emissions back into the process. Defendant shall maintain and provide a record of the improvements recommended by the manufacturer, in accordance with Section VII (Reporting Requirements).

(b) Partial Control of Emissions from the Horizontal Belt Brown Stock Washer System.

1) Pursuant to an approved Compliance Schedule, as provided in Appendix B, Defendant shall install and commence operation of a gas vapor collection system at the entrance/feed roll of the horizontal belt brown stock washer and route the gases to an incinerator or other control device meeting the requirements of 40 C.F.R. § 60.283(a)(1).

2) If Defendant pursues this compliance measure, Defendant shall submit to EPA, DOJ, and DEQ a proposed Compliance Schedule no later than March 31, 2026, for approval. The Compliance Schedule shall meet the requirements of Appendix B.

(c) Complete Control of Emissions from the Horizontal Belt Brown Stock Washer System.

1) Pursuant to an approved Compliance Schedule, as provided in Appendix B, Defendant shall install and commence operation of a gas vapor collection system at the horizontal belt brown stock washer and route the gases to an incinerator or other control device meeting the requirements of 40 C.F.R. § 60.283(a)(1). Minimal fugitive emissions where the pulp enters and exits the horizontal belt brown stock washer are expected.

2) If Defendant pursues this compliance measure, Defendant shall submit to DOJ, EPA, and DEQ a proposed Compliance Schedule no later than March 31, 2026, for approval. The proposed Compliance Schedule shall meet the requirements in Appendix B.

(4) If Defendant pursues the compliance measure in either Paragraph 14.b(3)(a) or 14.b(3)(b), Defendant shall create a written Enhanced Maintenance Plan to minimize emissions from the horizontal belt brown stock washer system by no later than November 28, 2025. The Enhanced Maintenance Plan shall include, but is not limited to:

(a) Adding the horizontal belt brown stock washer to the

Facility's existing LDAR Plan, which shall include:

1) Incorporating the requirements of Paragraphs 14.a(3) and 14.a(4).

2) If an inspection of the horizontal belt brown stock washer identifies visible defects, or if an instrument reading of 500 parts per million by volume or greater above background concentration is measured, then Defendant shall take corrective action as soon as practicable. The identification of a leak through visual or instrument inspections will not be considered a violation of NSPS Subpart BB, provided that the following protocol is followed.

a) A first effort to repair or correct the system shall be made as soon as practicable but no later than 5 Days after the defect or leak is identified.

b) The final repair or corrective action shall be completed no later than 15 Days after the defect or leak is identified.

c) Delay of repair or corrective action is permissible if the repair or corrective action is technically infeasible without a multi-day process unit shutdown or if the owner or

operator determines that the emissions resulting from immediate repair would be greater than the emissions likely to result from delay of repair. Defendant shall complete repair of such equipment by the end of the next process unit maintenance outage of appropriate duration or 18 months from discovery, whichever is sooner.

(b) Conducting routine assessment of seal conditions with regular inspection and repairs.

(5) If Defendant implements the compliance measure in Paragraph 14.b(3)(c), Defendant is subject to the routine monitoring requirements under 40 C.F.R. § 63.453(k).

(6) No later than December 31, 2025, Defendant shall implement the Enhanced Maintenance Plan at the horizontal belt brown stock washer. If Defendant elects to comply with compliance measure 14.b(3)(b) or 14.b(3)(c)1), then the Enhanced Maintenance Plan must include any associated closed vent systems after installation.

c. Power Boilers Number 2 and 3.

(1) No later than October 31, 2025, Defendant shall demonstrate that Power Boilers Number 2 and 3 are in compliance with the applicable emission limits for hydrogen chloride and mercury, in accordance with 40 C.F.R. § 63.7530. Defendant shall:

(a) Conduct performance tests for Boiler Number 2 and Boiler Number 3 according to 40 C.F.R. § 63.7520 and Table 5 of NESHAP Subpart DDDDD. Defendant may remain on its existing compliance schedule if the emissions in the stack tests are less than 75 percent of the applicable emission limit, in accordance with the requirements of 40 C.F.R. § 63.7515;

(b) Conduct an updated fuel analyses for Boiler Number 2 and Boiler Number 3, pursuant to 40 C.F.R. § 63.7521 and Table 6 of NESHAP Subpart DDDDD; and

(c) Establish operating limits for Boiler Number 2 and Boiler Number 3, pursuant to § 63.7530 and Table 7 of NESHAP Subpart DDDDD.

(2) No later than December 31, 2025, Defendant must submit a revised Notification of Compliance Status ("NOCS") for Boiler Number 2 and Boiler Number 3 to EPA pursuant to the Reporting Requirements (Section VII) and Notices (Section XIV) herein. The NOCS must include all the elements specified in 40 C.F.R. §§ 63.7545 (e)(1) through (8).

15. <u>Certification of Compliance</u>. Upon the completion of each requirement of Paragraph 14 of this Section, Defendant shall certify to EPA, DOJ, and DEQ, in accordance with Paragraph 24, in the next semi-annual report pursuant to Paragraph 21 that the Facility is in compliance with that requirement of this Consent Decree. After Defendant has achieved compliance with all of the requirements of this Section (Compliance Requirements), Defendant

shall certify to EPA, DOJ, and DEQ, in accordance with Paragraph 24, in the next semi-annual report pursuant to Paragraph 21, that the Facility is in compliance with this Section of the Consent Decree.

16. Permits. Where any compliance obligation under this Consent Decree requires Defendant to obtain a federal, State, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI. ADDITIONAL INJUNCTIVE RELIEF: MITIGATION

17. For the purpose of mitigation of environmental harm allegedly caused by the operations of Defendant, Defendant shall implement the Mitigation Projects as described in Paragraphs 18 – 19. These Projects are not in lieu of civil penalties.

18. Mitigation Project – Capping Valve Repair and Replacement Project.

a. No later than December 31, 2024, Defendant shall complete inspections and maintenance, or replacement, of the capping valves on all ten (10) Batch Digesters at the Facility. Inspections include checking the condition of sealing surfaces on the seats, trim (disc, ball, plug, etc.), body, and body cap as well as checking the wear of bearings and bearing contact surfaces on the shaft. Maintenance includes pressure testing, and replacement of wear parts, as well as any component out of manufacturer tolerance.

b. No later than 30 days after the Effective Date, Defendant shall implement

an operation and maintenance program that includes the removal, rebuilding, and reinstallation or replacement of the capping valves located on all ten (10) Batch Digesters on a biennial (every two years) basis in a manner consistent with safety and good air pollution control practices for minimizing emissions as set forth in 40 C.F.R. §§ 60.11(d), 63.6(e), and 63.453(q). The first biennial cycle begins January 1, 2025, and ends December 31, 2026.

c. No later than 180 days after the Effective Date, Defendant shall apply for a Title V Permit (or modify existing permit) incorporating the capping valve operations and maintenance program of Paragraph 18.b) as described in Paragraph 16 (Permits).

d. No later than 30 days after the Effective Date, Defendant shall ensure that all emissions from the Batch Digesters are vented into a closed vent system and routed to a control device meeting the requirements of 40 C.F.R. § 63.443(d), and that the operations and maintenance program of Paragraph 18.b) is implemented to minimize any fugitive emissions of regulated pollutants from the capping valves while under pressure.

e. If the capping valve work practice standards under of 40 C.F.R. Part 63 Subpart S are revised to be more stringent than the requirements as written in Paragraph 18.b), Defendant shall comply with the more stringent applicable 40 C.F.R. Part 63 Subpart S requirements.

19. Mitigation Project – Screw Press Project.

a. No later than 90 days after the Effective Date, Defendant shall complete the installation of two new screws on the screw presses at the Facility. Defendant shall perform required maintenance to maintain three operable screw presses for the duration of this Consent Decree. If one press becomes inoperable, Defendant shall use best efforts

to return the press to an operable condition or, at its discretion, replace the press with another operable press.

b. Defendant shall monitor and maintain records of the quantity of sludge generated by the screw press operations and the operating status of each screw press on a daily basis.

c. Defendant shall monitor and maintain records of the quantity of solids at the inlet to the wastewater treatment system on a daily basis. Defendant shall calculate the percent efficiency of screw press operations on a quarterly basis.

d. No later than 180 days after the Effective Date, Defendant shall contract with a qualified third party to conduct a water treatment system operations assessment to identify additional improvement measures in treatment efficiency.

20. Mitigation Project Certifications. With regard to the Mitigation Projects, Defendant certifies the truth and accuracy of each of the following:

a. That, as of the date of executing this Consent Decree, Defendant is not required to perform or develop the Mitigation Projects by any federal, state, or local law or regulation and is not required to perform or develop the Mitigation Projects by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b. That the Mitigation Projects are not Mitigation Projects that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree;

c. That Defendant has not received and will not receive credit for the Mitigation Projects in any other enforcement action; and

d. That Defendant shall neither generate nor use any pollutant reductions from the Mitigation Projects as netting reductions, pollutant offsets, or to apply for, obtain, trade, or sell any pollutant reduction credits.

## VII. REPORTING REQUIREMENTS

21. Semi-Annual Consent Decree Report. Defendant shall submit to EPA, DOJ, and DEQ in accordance with the requirements of Section XIV (Notices), a written, Semi-Annual Consent Decree Report no later than July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII (Termination) covering the preceding six months (i.e., January 1 to June 30 and July 1 to December 31). Each report shall include:

a. Status and description of Defendant's progress in satisfying its obligations under Section V (Compliance Requirements), Appendix A, Appendix B, and Section VI (Mitigation), including, at a minimum, a narrative description of activities undertaken, status of any construction or installation of compliance measures, implementation or completion dates, inspection dates, and any problems encountered or anticipated in implementing the Compliance Requirements, together with implemented or proposed solutions, completion of milestones, status of permit applications; operation and maintenance, until the time that the Defendant submits Certifications of Compliance pursuant to Paragraph 15;

b. A summary of all permitting activity pertaining to compliance with Section V (Compliance Requirements), and Section VI (Mitigation);

c. Paragraph 14.a) Records.

(1) Name of Third-Party Reviewer conducting monthly visual

inspections;

(2) Monthly visual inspection records;

(3) Semi-annual Method 21 and Negative Pressure inspection records;

d. Paragraph 14.b) Records.

(1) Records of the improvements and repairs recommended by the manufacturer at the horizontal belt brown stock washer;

(2) Copy of approved Compliance Schedule, if compliance measure 14.b(3)(b) or 14.b(3)(c)1)14.b(3)(c) has been selected;

(3) Copy of most recent version of written Enhanced Maintenance Plan;

(4) Listing of any horizontal belt brown stock washer components added to Delay of Repair with date of leak/defect detected, date of first attempt of repair, date of final attempt of repair, and reason for placing on Delay of Repair;

(5) Dates of next scheduled multi-day process unit shutdown;

(6) Dates of any unscheduled multi-day process unit shutdowns during the semi-annual period.

e. Paragraph 18 Records.

(1) Listing of dates, Batch Digester ID, and summary of maintenance for each Batch Digester serviced during the semi-annual reporting period;

f. Paragraph 19 Records.

(1) Dates and duration when fewer than two screw presses were operating;

(2) Quarterly percent efficiency of screw press operations pursuant to

Paragraph 19.c);

(3) Quarterly calculations of biological treatment system percent reduction or mass removal pursuant to 40 C.F.R. § 63.457(l). Provide the fraction of methanol in the wastewater biodegraded in the wastewater treatment system ("Fbio (MeOH)") and the fraction of methanol emitted from the wastewater to the atmosphere ("Fe");

g. Include copies of all Notices from Paragraph 22. The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

22. Notices of Non-Compliance. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify DOJ, EPA, and DEQ of such violation and its likely duration, in writing, within 10 Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

a. If the cause of a violation cannot be fully explained at the time the initial notice is due, Defendant shall so state in the notice. Defendant shall investigate the cause of the violation and submit follow-up notifications every 30 days from the date of the initial notice until the violation has been fully resolved (i.e. a full explanation of the cause of the violation and all corrective actions completed).

b. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX (Force Majeure).

23. Whenever any violation of this Consent Decree or of any applicable permits or

any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and DEQ as per Section XIV (Notices) orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This notice requirement is in addition to the requirement to provide notice of violation of this Consent Decree set forth in the preceding Paragraph.

24. Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

25. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

26. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

28. Defendant shall be liable for stipulated penalties to the United States and DEQ for

violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

29. Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late to the United States or DEQ.

30. Failure to Meet Compliance Requirements.

a. Compliance Milestones. The following stipulated penalties shall accrue per violation for each violation of the following requirements identified in Section V (Compliance Requirements):

| Violation | Penalty |
|---|---|
| (1) For failure to have visual inspections conducted by a contractor, as required by Paragraph 14.a(3). | $5,000 per month |
| (2) For failure to conduct semiannual inspections as required by Paragraph 14.a(4). | $500 per day late, up to $15,000 per month |
| (3) For failure to make repairs as specified in Paragraphs 14.b(4)(a)2)a) and 14.b(4)(a)2)b). | $250 per component per day repair was late |
| (4) For failure to comply with delay of repair requirements specified in Paragraph 14.b(4)(a)2)c) or improperly placing a component on delay of repair. | $425 per component per day repair was improperly delayed |
| (5) For failure to operate Power Boilers Numbers 2 and 3 within established operating parameters as specified in | $125 per day, per boiler if deviation identified by Defendant and $1500 per day, per boiler if deviation is identified |

| | |
|---|---|
| Paragraphs 14.c(1). | through a federal, state, or local investigation |

b. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section V (Compliance Requirements) not identified in Paragraph 30.a) and in Paragraphs 18 and 19 of Section VI (Mitigation):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 900 ........................................ | 1st through 14th Day |
| $ 1,800 ........................................ | 15th through 30th Day |
| $ 3,600 ........................................ | 31st Day and beyond |

31. Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 ........................................ | 1st through 14th Day |
| $ 1,000 ........................................ | 15th through 30th Day |
| $ 1,500 ........................................ | 31st Day and beyond |

32. If Defendant fails to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States and DEQ at least 30 Days prior to any transfer of any portion of the Facility; or (c) provide a copy of the final written agreement with the transferee as required by Paragraph 4, Defendant shall pay a stipulated penalty of $4,000 per occurrence.

33. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

34. Defendant shall pay stipulated penalties to the United States and DEQ within 30 Days of a written demand by either Plaintiff. Defendant shall pay 50 percent of the total

stipulated penalty amount due to the United States and 50 percent to DEQ. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

35. Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

36. Stipulated penalties shall continue to accrue as provided in Paragraph 33, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA or DEQ that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or DEQ within 30 Days of the effective date of the agreement or the receipt of EPA's or DEQ's decision or order.

b. If the dispute is appealed to the Court and the United States or DEQ prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

37. <u>Obligations Prior to the Effective Date</u>. Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Paragraphs 14 and 18 that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless

and until this Consent Decree is entered by the Court.

38. Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 9 and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendant shall pay stipulated penalties owing to DEQ in the manner set forth by Paragraph 12.

39. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or DEQ from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

40. The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

41. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' or DEQ's exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States and DEQ expressly reserve the right to seek any other relief they deem appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX. FORCE MAJEURE

42. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

43. If any event occurs for which Defendant will or may claim a force majeure, Defendant shall provide notice to EPA and DEQ by email in accordance with Section XIV (Notices). The deadline for the initial notice is 5 Days after Defendant first knew or should have known that the event would likely delay or prevent performance. Defendant shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Defendant knew or should have known.

44. Regardless of whether Defendant seeks to assert a claim of force majeure concerning the event, within 10 Days after the notice under Paragraph 43, Defendant shall submit a further notice to EPA and DEQ that includes (a) an explanation and description of the event and its effect on Defendant's completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay

and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Defendant to complete the requirements of the Consent Decree; (d) Defendant's rationale for attributing such delay to a force majeure if it intends to assert such a claim; (e) a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

45. Failure to submit a timely or complete notice or claim under Paragraph 43 or 44 regarding an event precludes Defendant from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether Defendant has exercised its best efforts, under Paragraph 42.

46. After receipt of any claim of force majeure, EPA, after a reasonable opportunity for review and comment by DEQ, will notify Defendant of its determination whether Defendant is entitled to relief under Paragraph 42, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

47. If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant has the burden of proving that it is entitled to relief under Paragraph 42, that its proposed excuse of, or extension of the time for performance of, the obligations affected by the force majeure was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 42 through 44. If Defendant carries this

burden, the delay or non-performance at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

48. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States or DEQ to enforce any obligation of Defendant arising under this Decree precludes Defendant from raising any such issue as a defense to any such enforcement action.

49. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within seven Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

50. Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting

Defendant's position and any supporting documentation relied upon by Defendant.

51. The United States will send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Defendant unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

52. Judicial Dispute Resolution. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion (a) must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 49, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

54. Standard of Review

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 52 pertaining to the adequacy or appropriateness of plans, procedures to implement plans,

schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 52, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

55. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

56. The United States, DEQ, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or DEQ in

accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data; and

e. assess Defendant's compliance with this Consent Decree.

57. Upon request, Defendant shall provide EPA and DEQ or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and DEQ shall provide Defendant splits of any samples taken by EPA or DEQ.

58. Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that directly relate to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or DEQ, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

59. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and DEQ at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or DEQ, Defendant shall deliver any such documents, records, or other information to EPA or DEQ. Defendant may assert that

certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

60. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2 for submissions to EPA and in Ark. Code Ann. §§ 4-75-601 *et seq.*, and 8 CAR §§ 40-1302 and 41-313 for submissions to DEQ.

61. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or DEQ pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

62. This Consent Decree resolves only the civil claims of the United States and DEQ for the violations alleged in the Complaint filed in this action through the date of lodging.

63. The United States and DEQ reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to

limit the rights of the United States or DEQ to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 62. The United States and the DEQ further reserve all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

64. In any subsequent administrative or judicial proceeding initiated by the United States or DEQ for injunctive relief, civil penalties, or other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DEQ in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 62.

65. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and DEQ do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. §§ 7401 *et seq.*, or with any other

provisions of federal, State, or local laws, regulations, or permits.

66. This Consent Decree does not limit or affect the rights of Defendant or of the United States or DEQ against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

67. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

68. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and DEQ shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV. NOTICES

69. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12655 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-12655 |

As to EPA by email: EPA by email through the Consent Decree Reporting System: Register and upload Consent Decree submittals at https://cdx.epa.gov.

As to DEQ by email (preferred): to the Compliance Program Manager of the Office of Air Quality at DEQ, currently Heinz Braun at heinz.braun@arkansas.gov.

| | |
|---|---|
| As to DEQ by mail: | Arkansas Department of Energy and Environment<br>Division of Environmental Quality<br>Office of Air Quality<br>Attn: Compliance Program Manager<br>5301 Northshore Drive<br>North Little Rock, AR 72118 |
| As to Defendant: | Domtar A.W. LLC<br>Attn: Corporate Secretary<br>100 Kingsley Park Dr., Fort Mill, SC 29715 |
| With a copy to: | Domtar A.W. LLC<br>Attn: Mill Manager<br>285 Highway 71 South, Ashdown, AR 71822 |

70. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

71. Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. <u>EFFECTIVE DATE</u>

72. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. If the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI. RETENTION OF JURISDICTION

73. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

74. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

75. Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

76. After Defendant has completed the requirements of Section V (Compliance Requirements), has thereafter maintained continuous satisfactory compliance with this Consent Decree and Defendant's permit(s) for a period of two (2) years, has complied with all other requirements of this Consent Decree, including those relating to the Mitigation Project required by Section VI, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon EPA, DOJ, and DEQ a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

77. Following receipt by the United States and DEQ of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with DEQ, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

78. If the United States, after consultation with the DEQ, does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 120 Days after service of its Request for Termination.

## IX. PUBLIC PARTICIPATION

79. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

80. Each undersigned representative of Defendant, DEQ, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that that person is fully authorized to enter

into the terms and conditions of this Consent Decree and to execute and legally bind the Party that person represents to this document.

81. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI. INTEGRATION

82. This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

83. For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraph 5 in Section II (Applicability); Paragraphs 13 through 20 in Section V (Compliance Requirements) and related Appendices A and B; Paragraphs 21 through 22, and 24 through 25 in Section VII (Reporting Requirements); and Paragraphs 56 through 59 in Section XI (Information Collection and Retention) is restitution, remediation, or required to come into compliance with law.

## XXIII. HEADINGS

84. Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIV. FINAL JUDGMENT

85. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, DEQ, and Defendant.

## XXV. APPENDICES

86. The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Third-Party Reviewer requirements.

"Appendix B" is the Compliance Schedule Requirements.

Dated and entered this 20th day of October, 2026

UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

7/22/2026
Date

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Kiana Courtney (FL Bar No. 1010206)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

Candace L. Taylor
Assistant U.S. Attorney
Bar No. 98083
414 Parker Avenue
Fort Smith, Arkansas 72901
479-783-5125
candace.taylor@usdoj.gov

Cheryl J Seager

Digitally signed by CHERYL SEAGER
Date: 2026.07.22 13:40:04 -05'00'

CHERYL SEAGER
Director
Office of Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75270

FOR THE ARKANSAS DEPARTMENT OF ENERGY & ENVIRONMENT

2-20-26
Date

Mary Frances Easterly, AR Bar 2023088
Attorney
Arkansas Department of Energy & Environment
5301 Northshore Drive
North Little Rock, AR 72118
(501) 682-0673
golly.easterly@arkansas.gov

FOR DOMTAR A.W. LLC:

02/19/2026
Date

Tracy Altenbaumer
General Manager, Domtar Ashdown
285 Highway 71 South, Ashdown, AR 71822
(870) 888-9868
tracy.altenbaumer@domtar.com

# APPENDIX A

## Third-Party Reviewer

1. Defendant shall hire an independent third-party ("Third-Party Reviewer"), as required by Paragraph 14.a. Defendant shall meet the following requirements when hiring the Third-Party Reviewer:

a. Domtar shall bear the cost of retaining the Third-Party Reviewer.

b. Hiring. Defendant shall submit to EPA and DEQ the names and qualifications of the proposed Third-Party Reviewer with experience in conducting visual and Method 21 inspections at pulp and paper mills to conduct a full review of the Facility's Leak Detection and Repair ("LDAR") Site Specific Inspection Plan ("LDAR Plan"), in accordance with Paragraph 14.a.

2. Third-Party Reviewer Approval Procedure. EPA, after consulting with DEQ, shall inform Defendant in writing the proposed Third-Party Reviewer, if any, it has approved. No later than July 31, 2025, Defendant shall retain the selected candidate to serve as the Third-Party Reviewer and to perform the activities set forth in Paragraph 14.a.

a. If Defendant or EPA and DEQ determine that the Third-Party Reviewer approved by EPA cannot satisfactorily perform the required review, then Defendant, EPA, and DEQ shall informally confer. If they agree that a new Third-Party Reviewer should be selected, Defendant shall submit to EPA for approval the name and qualifications of a proposed replacement Third-Party Reviewer that meets the qualifications set forth in Paragraph 14.a. If Defendant and EPA do not agree on the need to select a replacement Third-Party Reviewer, EPA's position shall control, subject to Defendant's right to invoke the Dispute Resolution procedures in Section X of this

Consent Decree.

3. Conducting the Third-Party Review. Defendant shall give the Third-Party Reviewer a copy of this Consent Decree with all appendices and all other information and access necessary to complete the Third-Party Review.

a. Defendant shall cooperate fully with any reasonable requests of the Third-Party Reviewer, and provide the Third-Party Reviewer with access, upon reasonable notice that the Third-Party Reviewer reasonably deems appropriate to effectively perform the duties described in Paragraph 14.a.

# APPENDIX B

## Compliance Schedule Requirements

1. Any compliance schedule prepared pursuant to Paragraph 14.b(3)(b) or 14.b(3)(c) of the Consent Decree ("Compliance Schedule"), shall include at a minimum:

a. Permitting. A schedule detailing when Defendant will apply for the requisite air permit (or modification to the existing permit), as described in Paragraph 16 of the Consent Decree, to allow for the construction, installation, and operation of the selected compliance measure.

b. A schedule for design, construction, and operation of the selected compliance measure under Paragraph 14.b(3), including dates for the start and completion. Defendant shall complete the construction and installation associated with the project and commence operation of the newly installed equipment within 18 months of receiving permitting authority approval to proceed.

c. A description of steps taken, or to be taken, to minimize emissions at the horizontal belt brown stock washer system until the selected compliance measure is completed. This includes any repair, replacement, addition, or upgrade of equipment, temporary controls, or the temporary removal from service.

2. Compliance Schedule Approval Procedure. After review of any Compliance Schedule that is required to be submitted for approval pursuant to Paragraph 14.b(3)(b) or 14.b(3)(c) of the Consent Decree, EPA, after consultation with DEQ, will in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

a. If the submission is approved, Defendant shall take all actions required by the Compliance Schedule as approved.

b. If the submission is approved upon specified conditions, upon written direction from EPA, after consultation with DEQ, Defendant shall take all actions required by the approved Compliance Schedule.

c. If the submission is approved in part, upon written direction from EPA, after consultation with DEQ, Defendant shall take all actions required by the approved portion of the Compliance Schedule that EPA, after consultation with DEQ, determines are technically severable from any disapproved portions. Defendant shall also, within 15 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with Appendix B, Section V (Compliance Requirements), and Section XIV (Notices).

d. If the submission is disapproved in whole, Defendant shall, within 15 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

e. If the resubmission is approved in whole or in part, Defendant shall take all actions required by the approved portion of the Compliance Schedule that EPA, after consultation with DEQ, determines are technically severable from any disapproved portions.

f. If a resubmitted compliance schedule or portion thereof is disapproved in whole or in part, EPA, after consultation with DEQ, may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies.

g. If Defendant and EPA do not agree on the Compliance Schedule after implementation of the procedures in Paragraph 2.e) of this Appendix, EPA's position shall control, subject to Defendant's right to invoke the Dispute Resolution procedures in Section X (Dispute Resolution) of this Consent Decree.

3. Reporting. The Compliance Schedule is subject to the reporting requirements in Section VII (Reporting Requirements).

4. Deviations and Extensions from an approved Compliance Schedule. If Defendant becomes aware that a deadline or milestone will be missed, Defendant should notify DOJ, EPA, and DEQ as soon as practicable before the missed deadline. If Defendant does not notify DOJ, EPA, and DEQ prior to a missed deadline or milestone, Defendant may be subject to stipulated penalties.